IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| RAYMOND RAY NIETO, Jr., ) <br> (TDCJ No. 01723724), ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> FNU HONEE, *et al.*, ) <br> ) <br> Defendants. ) | <br><br><br><br><br><br>CIVIL ACTION NO. <br> 1:16-CV-188-BL <br><br><br> Assigned to U.S. Magistrate Judge |

### REPORT AND RECOMMENDATION

This case was reassigned to the United States Magistrate Judge under Second Amended Special Order No. 3-301. Although Plaintiff was informed of the right to consent to the disposition of this case by a magistrate judge under 28 U.S.C. § 636(c), he has chosen to not consent, and therefore the undersigned magistrate judge enters this report and recommendation under the authority of 28 U.S.C. 636(b). Based on the relevant filings and applicable law, all claims stated in the complaint, as supplemented by the more definite statement, should be **DISMISSED.** After entry of this report and recommendation, the case should be reassigned to Senior United States District Judge Sam R. Cummings.

### I. BACKGROUND/FACTS

Plaintiff Raymond Nieto, Jr. ("Nieto"), acting *pro se*, filed a form civil rights complaint. Complaint (doc. 1.) In the complaint, Nieto named as defendants four individual Texas Department of Criminal Justice officers assigned to the Telford Unit: Ms. Honee; Officer Cato; Captain Dennis Martin; and Captain S. Allen. *Id.* at 3. He also named three officials at the Robertson Unit: Warden Webb; Mrs. Odom; and Ms. Rayes. *Id.* The complaint includes the following Statement of Claim:

(Paragraph #1): The TDCJ transferred me from Telford Unit, in New Boston, Texas, to the French M. Robertson Unit in Abilene Texas on date-October 30, 2013, and while I was at the Telford Unit, I had to surrender all my property but one bag, to be shipped to the French Robertson Unit after I left the Telford unit, under the agency policy. Included in my property that was left behind at the Telford Unit was three books, and all of my legal papers that were necessary for me to satisfy my burden of proof to the courts, for my habeas corpus claims on the ineffective assistance of counsel I received at my trial.

(Paragraph #2): When my property containing my legal materials was not forwarded to the French Robertson unit, within the reasonable amount of time under the Department's Policy, and title 4, § 501.007, Texas government Code, and after all of my informal attempts to recover my legal materials failed, I filed administrative grievance to exhaust my administrative remedies with the agency. Neither my Step (1) One or Step (2) Two Grievances resulted in the recovery of my legal materials or lost property after agency employees failed to deliver them to me at the French M. Robertson Unit, from the Telford Unit.

(Paragraph #3): Agency Employees Lost - which is irreplaceable because the witness is no longer available to give me the same piece of evidence, and the evidence is critical to satisfy my burden of proof in my habeas corpus claim that my attorney at trial was ineffective. I do not have any other means of satisfying this specific claim without this piece of evidence, which T.D.C. J. employees lost and refuse to look for after I have completed the exhaustion process under Title 4, 501.008, of the grievance process governing administrative remedies and lawsuits. I am effectively denied access to the courts, when I cannot satisfy my burden of proof because agency officials lost my evidence, and the law books I needed to litigate my ineffective assistance of counsel claim and refused to replace them.

Compl. 4-6 (doc.1). Accompanying the complaint, Nieto provided a copy of two separate Step 2 Grievance forms. In the earliest grievance, dated by Nieto on December 2, 2013 and not responded to, Nieto recites the prior loss of property and it having been "45 working days since I wrote my last grievance on my property that I was missing." Compl. Exhibit at 8-9 (doc. 1). In the second grievance, dated by Nieto on May 15, 2014 and responded to on July 31, 2014, Nieto again complains of the loss of his property, and recites two separate loss-of-property incidents, one in early September 2013 for which he acknowledges he signed for receipt of some of the property, and

another to include the loss of legal material that he claims has not been returned. Compl. Exhibit at 10-11 (doc.1). The response by Assistant Regional Director B. Armstrong, dated July 31, 2014, provides: "[i]nvestigation reveals according to records, you received your property that you allege is missing. However, there is no fan notated [sic] on any of the prop. O5 forms in your file. No further action warranted by this office." *Id.*

With regard to the relief sought in this case, Nieto seeks a declaratory judgment that (1) TDCJ officials violated his First Amendment right of access to court by losing his law books and legal materials when he was transferred from the Telford Unit to the Robertson Unit in October 2013, and that (2) the loss of such materials prevented him from satisfying his burden of proof in a habeas corpus proceeding. Compl. 4, 6 (doc. 1). He also seeks to be "reimbursed on my property." *Id.* at 6.

After reviewing the complaint, the Court directed Nieto to file a separate document listing his answers to the Court's enumerated questions as a more definite statement. Order for More Definite Statement (MDS) (doc. 8). Instead of filing a separate document listing his answers, Nieto merely photocopied the Court's list of questions in the order for more definite statement and wrote handwritten responses to some of the questions. (Doc. 8.) The Court will construe that document as a more definite statement (MDS).

As to the Telford Unit based defendants, Nieto alleges further that as to Honee, as she was a property officer, "it's her job to maintain and store property." MDS at 2 (doc. 8.) With regard to Cato, Nieto alleges "[h]e was the reason it all happen [sic], he falsely wrote a case that lead [sic] to me getting lock up [sic] and my property to get took up [sic] and lost," and Nieto alleges that Cato interfered with his "right to all my legal paperwork, legal mail and personal property." *Id.* at 3. With

regard to Telford Unit Captains Dennis Martin and S. Allen, Nieto wrote only that "I told [them] about my life being in danger." *Id.*

With regard to the Robertson Unit defendants, Nieto's allegations arise from actions taken with regard to the processing of grievances. As to Warden Webb, Nieto recites""Warden Webb read my grievance and sign off [sic] the documents." MDS at 2 (doc. 8). As to defendant Odom, Nieto writes only that "I sent a I-60 telling him about my property." *Id.* at 2. And as to defendant Rayes, Nieto lists that "[w]hen I got moved to the 8 Building she handles inmate's property, so I had to send her an I-60." *Id.* Although the Court asked Nieto to provide more specific facts as to the dates regarding the resolution of his grievances, Nieto's answers included no additional dates. MDS 3 (doc. 8). Court staff telephone contact with the Texas Department of Criminal Justice Classification Department on June 1, 2018, confirms that Nieto was transferred into the Telford Unit in September 2013, and then briefly to the Beto Unit before he was transferred to the Robertson Unit in late October 2013; and that since that time, other than temporary transfers out of the Robertson Unit for medical care, Nieto has remained assigned to the Robertson Unit.

## II. PRELIMINARY SCREENING

Plaintiff is an inmate who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a

defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

### III. ANALYSIS

**(A).  Claims against Telford Unit Defendants Barred by Statute of Limitations**

The Supreme Court has held that all § 1983 actions are governed by the statute of limitations for personal-injury actions for the state of suit. *See Wilson v. Garcia*, 471 U.S. 261, 273-76 (1985) (holding that state statute of limitations period for personal-injury actions applies to all claims under 42 U.S.C. § 1983). In Texas, the applicable limitations period is two years. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) (noting that district courts in Texas must use Texas's general two-year, personal-injury limitations period); *see* Tex. Civ. Prac. & Rem. Code 16.003(a) (West 2017) (Texas's two-year, personal-injury limitations statute). A district court may dismiss claims *sua sponte* under § 1915 where it is clear from a review of the complaint that the alleged claims are barred by the applicable statute of limitations. *See Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir.

1999); *see also Moore*, 30 F.3d at 620 (citing *Gartrell V. Gaylor*, 981 F.2d 254, 256 (5th Cir.1993)).

Federal courts look to federal law to determine when a civil-rights action accrues, and under federal law a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis for his action. *See Harris*, 198 F.3d. at 157 (citing *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992)). With regard to Nieto's knowledge of the loss of property complained of in this action, it is evident from a review of Nieto's writings in the Step 2 Grievance he prepared on December 2, 2013, that he then knew that his property had been lost and not returned. Thus, by that date, Nieto knew of, or had sufficient reason to know, that the loss of such property arising from the actions of officials while he was at the Telford Unit was a basis for his loss-of-property based causes of action.

Nieto's complaint in this action was received and file-stamped on October 25, 2016, and although Nieto did not date the signature block of the complaint, the envelope containing the document was post-marked October 24, 2016. Compl. 7, 12, (doc. 1). A plaintiff's complaint is considered filed under the mailbox rule as of the time he placed it in the prison mail system for mailing. *See Cooper v. Brookshire*, 70 F.3d 377, 378 (5th Cir. 1995). That date in this case was October 24, 2016. As noted above, the Court determined that Nieto knew of the loss-of-property injury by December 2, 2013. This suit was filed in October 2016, several months past two-years from the December 2, 2013 date Nieto knew of or had reason to know of the loss-or-property injury.

Nieto recites in his complaint that he exhausted the grievance process, and for purposes of this Court's preliminary review, he has provided exhibits that show that he started the grievance process by the same date the Court has construed that he became aware of the injury, December 2, 2013. The statute of limitations "is tolled while a prisoner fulfills 42 U.S.C. § 1997e's administrative

exhaustion requirement." *See Starks v. Hollier*, 295 F. App'x 664, 665 (5th Cir. 2008) (citing *Wright v. Hollingsworth*, 260 F.3d 357, 359 (5th Cir. 2001); *see also Harris*, 198 F.3d at 157-59 (holding that under the PLRA exhaustion requirement, limitations on a prisoner's § 1983 claim is tolled during administrative proceedings). Although the Court asked Nieto to provide additional details about the dates regarding the filing and processing of his grievances, such as asking him to provide the "total amount of time that each relevant grievance was pending," Nieto answered only "I can't remember but it took a wiel [sic]." MDS 3 (doc. 8). The Court, however, can review the grievance forms provided by Nieto, and as noted above, the final resolution of the second Step 2 Grievance form provided to the Court shows that Nieto was informed, on July 31, 2014, that TDCJ records showed that he had by then received the property he alleged was missing, such that TDCJ would take "no further action." Compl. Exhibit 10-11 (doc. 1). Thus, the Court will assume that Nieto is entitled to tolling of the applicable two-year limitations period for the whole time from the date the limitation commenced on December 2, 2013 until July 31, 2014, when Nieto was told that TDCJ would take no further action. But even applying this analysis, if the two year limitation period did not begin until July 31, 2014 because of tolling, two years from July 31, 2014 expired on July 31, 2016. Since Nieto's complaint was not constructively filed until October 24, 2016, almost three months after the two-year statute of limitations expired, his claims arising from the loss-of-property events at the Telford Unit are filed too-late.

In sum, based upon application of the applicable statute of limitations, and affording tolling of the limitation period for the time of administrative exhaustion, all of Plaintiff's claims in the complaint asserted against the Telford Unit based defendants for actions taken before October 30,

2013, must be dismissed as barred by the statute of limitations.[1]

**(B). No Claim Against Robertson Unit Defendants from the Filing of Grievances**

As noted above, Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a) (West 2012). A prison system is not, however, required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b) (West Supp. 2017). In this regard, "the law is clear that the plaintiff is not constitutionally entitled to an investigation of his complaints or administrative grievances or to a favorable response thereto." *Hayward v. Douglas, et al.*, No.07-072-FJP-DLD, 2011 WL 13182993, at *5 (M.D. La. March 1, 2011). Thus, allegations of a delay or denial in the processing of a grievance do not state a claims of a constitutional violation. As the United States Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers*:

> Insofar as [the inmate plaintiff] seeks relief regrading an alleged violation of his due process rights resulting from the prison grievance process, the district court did not err in dismissing his claims as frivolous . . . [an inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless."

*Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. March 15, 2002) ("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance

---

[1] Plaintiff Nieto makes no claim in the complaint of being subject to any danger or harm. In the more definite statement, however, Nieto includes handwritten notations claiming that he told Telford Unit Captains Dennis Martin and S. Allen that his "life was in danger." MDS 3 (doc. 8.) Although these writings bear no relation to anything else in the pleadings in order to state a claim for relief, as such allegations are asserted to have taken place against defendants while he was housed at the Telford Unit, any claims arising therefrom are also barred by the statute of limitations.

procedure does not amount to a constitutional violation") (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) and *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir.1996)). Another district court thus explained "Congress established the exhaustion requirement to give prison and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedure." *Stafford v. McKay*, CA No. 5:10-CV-35, 2010 WL 4274758, at *9 (E.D. Tex. Sep. 27, 2010), *rep. and rec. adopted*, 2010 WL 4286162 (Oct. 28, 2010). The only basis for Nieto's listing of each of the Robertson Unit based defendants, Webb, Odom, and Reyes is his claim that each of them failed to adequately respond to a grievance form submission or an I-60 inmate request to official form. Any claims that these defendants failed to properly investigate and/or respond to his administrative grievances and written complaints is without legal foundation and must be dismissed.

**(C). Lack of Sufficient Personal Involvement of any Defendant for Remaining Claim**

In the order for more definite statement, the Court asked questions about whether Nieto ever sustained any physical injury as a result of the actions complained of in the complaint. Order (doc. 7.) In brief handwritten notations in his response, Nieto wrote: "I try to kill myself behind my case," and he wrote that he tried to hang himself and as a result went to the hospital. MDS 4 (doc. 8). These writings are totally unrelated to the facts and underlying claims made the basis of the pleadings in this case. Nieto does not relate these brief statements to any other events or to any defendants. A claim of liability for violation of rights under 42 U.S.C. § 1983, regardless of the particular constitutional theory, must be based upon allegations of personal responsibility. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant"); *Jacquez v. Procunier*, 801 F.2d 789, 793

(5th Cir. 1986) ("In order to successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged"). Even to the extent Nieto's recitation that he tried to hurt himself and subsequently received medical care is taken as true, Nieto has not related that incident to the actions of any defendant, or to any of the underlying events made the basis of the suit. Thus, Nieto's brief handwritten writings of self-inflicted injury fail to state a claim against any defendant upon which relief may be granted.

## IV. RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that all Plaintiff Raymond Nieto, Jr.'s claims should be **DISMISSED** with prejudice under 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B)(i) and (ii).

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.

Any party may object to this Report and Recommendation. A party who objects to any part of this Report and Recommendation must file specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and identify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. The failure to file specific written objections will bar the aggrieved party from attacking on appeal the factual findings, legal conclusions, and recommendation set forth by the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds,* 28

U.S.C. § 631(b)(1) (extending the time to file objections from ten to fourteen days), *as recognized in ACS Recovery Servs., Inc. V. Griffin*, 676 F.3d 512, 521 n. 5 (5th Cir. 2012).

**SO ORDERED**.

Signed June 5, 2018.

                                               E. SCOTT FROST
                                               UNITED STATES MAGISTRATE JUDGE